

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

ENTERED
08/06/2009

| | | |
|---|---|---|
| IN RE: § | | |
| GREGORIO B VILLARREAL; dba § | Case No. 08-70002 | |
| GREG'S BALLROOM; aka § | | |
| VILLARREAL, *et al*, § | | |
|     Debtor(s). § | | |
| § | Chapter 13 | |
| § | | |
| GREGORIO B VILLARREAL; aka § | | |
| VILLARREAL; dba GREG'S § | | |
| BALLROOM, *et al*, § | | |
|     Plaintiff(s) § | | |
| § | | |
| VS. § | Adversary No. 08-7001 | |
| § | | |
| DAVID W SHOWALTER, *et al*, § | | |
|     Defendant(s). § | Judge Isgur | |

## MEMORANDUM OPINION

Gregorio B. Villarreal and Estela Villarreal, the debtors in this chapter 13 case, filed this adversary proceeding in which they seek to avoid the foreclosure of their real property. Although the foreclosure was conducted in accordance with state law, it enabled Showalter to receive more than he would have received in a hypothetical liquidation under chapter 7 of the Bankruptcy Code. Accordingly, the Court avoids the transfer made to Showalter at foreclosure.

### Jurisdiction and Venue

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334. The adversary proceeding is a core matter under 28 U.S.C. § 157. Venue is appropriate in this District pursuant to 28 U.S.C. § 1409.

### Facts

**Undisputed Facts**

Most facts are undisputed or have been resolved by this Court's prior opinions.

The Villarreals owned property, located at 4000 W. Expressway 83, Mission, Hidalgo County, Texas that primarily consisted of a restaurant and a ballroom. The property is commonly known as "Greg's Ballroom."

The Villarreals had a long-standing dispute with Armando Orta and other parties that arose out of a commercial relationship involving the ballroom. The dispute was ultimately resolved by a settlement agreement executed on April 24, 2007. As part of the settlement agreement, Mr. Villarreal agreed to make deferred payments of $70,000 (plus interest) to the Orta parties, with the deferred payments secured by a third lien on Greg's Ballroom. The third lien was executed by both Mr. and Ms. Villarreal. Showalter is the trustee for the holders of the third lien.

The Villarreals defaulted on their payments under the settlement agreement. Showalter, in his capacity as trustee, gave notice of default and posted Greg's Ballroom for foreclosure. On November 6, 2007, David Showalter, Trustee, foreclosed on Greg's Ballroom. Showalter was the successful bidder at the foreclosure sale, who credit bid the full amount of the Villareals' $70,000 debt. On January 4, 2008, the Villarreals filed their chapter 13 bankruptcy petition.

A more detailed background of the origins of the dispute and the execution of the original settlement documents is provided in this Court's February 3, 2009 Memorandum Opinion Relating to Objections Against Debtors' Homestead Exemption Claims, issued in case 08-70002. The factual background set forth in the February 3, 2009 Memorandum Opinion is incorporated in this opinion by reference.

**Disputed Facts**

There are three major disputed factual issues. The first is whether the November 6, 2007 foreclosure was conducted at the proper location at the Hidalgo County Courthouse and in the

2

proper manner. The second is whether the Villarreals were insolvent such that they could avoid the foreclosure pursuant to § 522 and § 547 of the Bankruptcy Code. The third is whether the foreclosure resulted in Showalter receiving more than he would have received in a hypothetical liquidation under chapter 7 of the Bankruptcy Code. This latter issue is a mixed question of law and fact.

With regard to the first issue, the Villarreals seek to set aside the foreclosure under Texas law by demonstrating an inadequate sale price along with an irregularity in the conduct of the sale. There are two alleged irregularities. First, the Villarreals allege that the foreclosure took place at the wrong part of the Courthouse property. Second, the Villarreals allege that the sale was not "called out" properly in accordance with Texas law.

A substantial amount of trial time was dedicated to determining the actual location of the sale. It is undisputed that the sale was required to take place at the location designated by the Hidalgo County Commissioners. The Hidalgo County Commissioners adopted a resolution on November 9, 1987 providing "that the steps or terrace immediately adjacent to the east entrance to the lobby of the Hidalgo County Courthouse is designed as the area at the Hidalgo County Courthouse where sales of real property are to take place pursuant to a Deed of Trust or other contract lien." Def. Ex. 19.

Part of Plaintiffs' exhibit 6 included a photograph of the East Side of the Hidalgo County Courthouse and the other part included a schematic drawing of that same East Side. Numerous witnesses described where foreclosure sales normally occurred. There was varying testimony concerning the precise location at which this particular foreclosure sale occurred. Having considered the entirety of the testimony, the Court has concluded that the sale occurred at a proper location. It most likely took place on the tile area within 20 feet of the area labeled on the

schematic as "Entrance to County Clerks Office", generally in the area marked with an "X" inside of a square on the schematic attached to Exhibit 6. The Court also finds that there is some reasonable probability that the foreclosure sale occurred between that area and the area marked "Main Doors", but finds only an insignificant probability that the foreclosure sale occurred in any other area. Accordingly, the Court finds that the sale occurred at the proper location authorized by Texas law.

With respect to the second alleged irregularity, the Court finds that the actual "call" of the sale was made by substitute trustee Sandra Falcon. Ms. Falcon testified at the hearing and the Court found her testimony credible. The Court finds that she called the sale in a loud voice, with no attempt to hide the conduct of the sale from any person. The Court recognizes that certain witnesses testified that they did not notice that Ms. Falcon was conducting the sale. The mere fact that people did not notice Ms. Falcon conducting the sale does not amount to an irregularity if she properly called the sale. Sales on "the courthouse steps" occur at a public forum and, by their very nature, may be accompanied by other activities and distractions. Buyers, for example, may be pre-occupied with other sales in which they have a greater interest. The Court has carefully considered the "call" of the sale and finds that it was accomplished by Ms. Falcon without irregularity.

The second factual dispute concerns whether the foreclosure sale occurred while the Villarreals were insolvent. 11 U.S.C. § 547. In determining whether the Villarreals were insolvent, the Court excludes consideration of the Villarreal's exempt property. 11 U.S.C. § 101(32)(A)(ii). Because debtors exempt only the equity that they have in property (i.e., the property remains subject to liens), the Court has evaluated the amount of debt owed by the Villarreals, excluding debt secured by the property listed on their exemption schedules.

The only evidence of the Villarreal's debt is found in Defendant's Exhibit 23, largely comprised of the Debtors' schedules and statements. Taken in the light *least* favorable to the Debtors, the Court concludes that the Debtors had liabilities of $42,428.00. This amount excludes the amounts listed in the Debtors' schedules that appeared to duplicate claims or have a statute of limitations defense. With respect to assets, the Debtors' schedules list only $3,105 of property to which a monetary value is attributed and that is not claimed as exempt. The testimony at trial indicated that there could be some value to the Debtors' general reputation in the community or to some causes of action, but the Court found such evidence to be insufficient to attribute a particular value to those assets.

Moreover, the Debtors were presumed insolvent on the date of the transfer, which was within the 90 day period immediately preceding the date of the filing of the bankruptcy petition. 11 U.S.C. § 547(f). In light of that presumption, the burden was on Mr. Showalter to prove that the Debtors were solvent at the time of the transfer. Given the limited evidence introduced at the trial, the Court concludes that the evidentiary presumption in § 547(f) was not overcome. Accordingly, the Court finds that the Villareals were insolvent on the date of the foreclosure sale.

The third disputed evidentiary issue is whether the foreclosure sale enabled Showalter to receive more than he would have received if the foreclosure had not occurred and Showalter had been paid under chapter 7 of the Bankruptcy Code. The Court will evaluate this issue in two parts. First, the Court will determine the value that was actually received by Showalter at the foreclosure sale. Second, the Court will determine—from both a factual and legal standpoint—the amount that Showalter would have received in a hypothetical chapter 7 liquidation.

**The Value Received by Showalter**

Mr. Showalter's appraiser valued the property at $4,020,000 shortly after the foreclosure sale. That amount is not inconsistent with all other value testimony given at the trial. Although there is some ambiguity as to the amount of debt at the time of the sale, it is clear that the total debts against the property were less than $750,000. Accordingly, when the property was sold at foreclosure, Mr. Showalter as the creditor/bidder received at least $3,250,000 to satisfy the remainder of his $70,000 claim.

**Amount to Have Been Received in a Hypothetical Chapter 7 Liquidation**

The factual determination of the amount that would have been paid to Showalter in a hypothetical chapter 7 liquidation is quite straightforward. That analysis is set forth below. The difficult task is determining whether the Court should undertake such an analysis or whether the analysis is precluded, as a matter of law, by the Supreme Court's decision in *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 114 S. Ct. 1757, 128 L. Ed. 2d 556 (1994).

Because this Court concludes that *BFP* does not apply in this case, the Court analyzes the amount that would have been paid to Showalter in a hypothetical chapter 7 liquidation and concludes that Showalter would have been paid approximately $100,000. Because this amount is dramatically less than the $3,250,000 in value actually received by Showalter, the Court avoids the transfer at the foreclosure sale.

Under 11 U.S.C. § 547(b), a trustee[1] may avoid any transfer of an interest of the debtor in property as a preference if the transfer was:

---

[1] The debtors—not the trustee—are the plaintiffs in this lawsuit. Debtors bring this cause of action pursuant to § 522(h) of the Bankruptcy Code. Section 522(h) allows the plaintiffs to avoid a transfer of exempt property if (i) the trustee could have avoided the transfer under § 547 of the Bankruptcy Code; and (ii) the trustee does not seek to avoid the transfer. The Court has previously held that the property is exempt and the parties do not dispute that the trustee has not acted to avoid the transfer. Accordingly, the sole issue under § 522(h) is whether the transfer could be avoided under § 547.

6

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

For the reasons set forth earlier in this opinion, subsections 1-4 of § 547(b) are satisfied. Subsection 1 is satisfied because Greg's Ballroom was transferred to Showalter in his capacity as a Villareal creditor. Subsection 2 is satisfied because the transfer was in satisfaction of the antecedent $70,000 debt owed to Showalter. Subsection 3 is satisfied because (for the reasons set forth above), the Villareals were insolvent on the date of the transfer. Subsection 4 is satisfied because the transfer occurred on November 6, 2007, a date within 90 days of the date on which the Villareals filed their bankruptcy petition.

The balance of this opinion will evaluate whether the transfer satisfies the requirements of subsection 5 of § 547(b) of the Bankruptcy Code.

Prior to the Supreme Court's decision in *BFP*, courts generally held that § 547(b)(5) applied to credit bids at foreclosure sales. If the credit bid was for less than what the property

7

would have generated in a hypothetical chapter 7 proceeding, courts held that the creditor received "more" than he would have in a hypothetical chapter 7 liquidation. *Winters v. First Union Nat'l Bank of Fla.*, 119 B.R. 283, 284 (Bankr. M.D. Fla. 1990); *see also In re Wheeler*, 34 B.R. 818, 822 (Bankr. N.D. Ala. 1983); *Park N. Partners, LTD v. Park N. Assocs. (In re Park N. Partners, LTD)*, 80 B.R. 551, 555 (N.D. Ga. 1987). After the Supreme Court's decision in *BFP*, courts split in their application of § 547(b)(5).

*BFP* considered whether a mortgage foreclosure sale that produced less than fair market value was a fraudulent conveyance under 11 U.S.C. § 548. In *BFP*, an individual purchased the debtor's home for $435,000 pursuant to a non-collusive foreclosure sale undertaken in accordance with applicable state foreclosure laws. *BFP*, 511 U.S. at 534. The debtor alleged that the transfer was an avoidable fraudulent transfer under § 548. Under a fraudulent transfer theory, the plaintiff must prove (among other things) that the debtor received "less than a reasonably equivalent value in exchange for such transfer." 11 U.S.C. § 548. In *BFP*, the debtor alleged that the foreclosure sale produced "less than a reasonably equivalent value" because the home's fair market value was $725,000 at the time that the home was sold at foreclosure for $435,000. *Id.* at 535.

The Supreme Court rejected the debtor's argument and held that the amount obtained from a non-collusive foreclosure sale conducted in accordance with applicable state law was, as a matter of law, "reasonably equivalent value." *Id.* at 545. The Court held that specifying a federal "reasonable" foreclosure-sale price would interfere with the essential state interest of ensuring the "security of the titles to real estate." *Id.* at 544 (quoting *Am. Land Co. v. Zeiss,* 219 U.S. 47, 60, 31 S. Ct. 200, 55 L. Ed. 2d 65 (1911)). "To displace traditional state regulation in such a manner, the federal statutory purpose must be 'clear and manifest.'" *Id.* at 544 (quoting

*English v. Gen. Elec. Co.,* 496 U.S. 72, 79, 110 S. Ct. 2270, 110 L. Ed. 2d 65 (1990)). Finding no "clear and manifest" federal statutory purpose for the choice of another "reasonably equivalent value" standard under § 548, the court held that "a fair and proper price, or a 'reasonably equivalent value,' for foreclosed property, is the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure [laws had] been complied with." *Id.* at 545.

The essential determination in *BFP* was that § 548 requires courts to examine value at the moment of and in the context of the state law foreclosure bid. Crucial to the Court's holding was the focus on "value" at the time of the transfer. The Court noted that the statute does not modify "value" with "fair market" or any other adjective suggesting that value should be considered outside the context of the actual transfer. *Id*. at 538. If a Court compared the foreclosure proceeds to what the debtor could have received outside a foreclosure proceeding, then the Court would be considering something akin to "market value" and adding language to § 548 that Congress chose to omit. *Id*. With the focus limited to the amount of and in the context of a state law foreclosure bid, the amount bid at foreclosure is *per se* "reasonably equivalent value" so long as state law foreclosure procedures were followed. *Id.*

The language of § 547 does not allow this Court to compare values at the moment of the foreclosure. Rather, § 547(b)(5) avoids transfers that enable a creditor to receive "more" than the creditor would have received under a hypothetical chapter 7 liquidation. 11 U.S.C. § 547(b)(5). Accordingly, § 547 mandates the comparison of values at different points in time by requiring the Court to compare the actual value received by the creditor at the moment of foreclosure with the amount that the creditor would have received if "*the transfer had not been made.*" 11 U.S.C. § 547(b)(5). Section 547(b)(5)(A) and (C) require the consideration of a

hypothetical transfer not at a foreclosure sale but "to the extent provided by the provisions of this title." Accordingly, the Court must determine how distributions in this case would have been made in a hypothetical chapter 7 liquidation.

Under Chapter 7 of the Bankruptcy Code, distributions to an oversecured creditor would be made pursuant to § 506 and § 363 of the Bankruptcy Code. Section 506 would govern the *amount* to which Showalter was entitled. Under § 506(b), Showalter's claim would have been increased by the amount of his interest and his "reasonable fees, costs and charges" determined in accordance with state law. 11 U.S.C. § 506(b).

The chapter 7 trustee would be authorized to sell the property under § 363(f)(3), a provision of the Bankruptcy Code that authorizes the trustee to sell property free and clear of all liens if the price at which the property is sold is greater than the aggregate value of all liens. As set forth above, there is no *bona fide* dispute that the value of the property was in excess of $4,000,000, that Showalter's claim was less than $100,000, and that all liens were less than $750,000. With such disparate amounts, the Court has no doubt that a chapter 7 trustee in a hypothetical liquidation would have sold the property pursuant to § 363(f)(3). Having converted the asset to cash, Showalter would have been paid approximately $100,000 in principal, interest, fees and expenses. The transfer at the foreclosure sale allowed Showalter to receive far more than he would have received in a hypothetical chapter 7 liquidation.

This result—a different economic result than would occur under § 548—arises because a chapter 7 liquidation does not have the same constraints as a foreclosure sale. A chapter 7 liquidation affords the trustee the time to orchestrate an orderly sale that produces a greater value than would be received at a foreclosure sale.

The Fifth Circuit has never considered whether *BFP* should apply to controversies under § 547 of the Bankruptcy Code. Nevertheless, the Fifth Circuit has applied *BFP* to one case arising under § 549 of the Bankruptcy Code. *In re T.F. Stone Co. v. Harper,* 72 F.3d 466 (5th Cir. 1995). In *Stone,* the court compared § 548 and § 549 to determine the meaning of "present fair equivalent value" in § 549, within the context of a tax foreclosure sale. The court found no meaningful difference between "present fair equivalent value" in § 549(c) and "reasonably equivalent value" in § 548 as applied in the context of a forced-sale case. *Id.* at 470.

*Stone* is instructive in this case. The Fifth Circuit did not automatically determine that *BFP's* analysis would apply to every avoidance action under the Bankruptcy Code. Instead, it evaluated the structure and language of § 549 and compared that structure and language to § 548. This Court will follow the Fifth Circuit in determining whether the structure and logic of § 547 is similarly comparable. As set forth in this opinion, this Court concludes that § 547 does not have the same or similar language as either § 547 or § 549. Instead, the plain language of § 547 compels a different result.

Unlike § 548(a)(1)(B)(i)'s "reasonably equivalent value" and § 549(c)'s "present fair equivalent value", § 547(b)(5) asks whether a creditor has received "more than such creditor would receive" in a hypothetical chapter 7 liquidation. Determining what constitutes "more" is a simple mathematical determination that can be easily calculated by a "reasonable [businessperson]." *In re FIBSA Forwarding, Inc.,* 230 B.R. 334, 337-38 (Bankr. S.D. Tex.), *aff'd*, 244 B.R. 94 (S.D. Tex. 1999).

Nevertheless, several courts have since extended *BFP*'s rational to § 547. *In re FIBSA Forwarding, Inc.,* 230 B.R. 334, 337 (Bankr. S.D. Tex.), *aff'd*, 244 B.R. 94 (S.D. Tex. 1999); *In re Pulcini*, 261 B.R. 836, 844 (Bankr. W.D. Penn. 2001); *In re Cottrell*, 213 B.R. 378, 383

11

(Bankr. M.D. Ala. 1996); *In re Glaser,* 2002 WL 32375007 (Bankr. E.D. Va. Oct. 25, 2002). The Courts suggest that a chapter 7 liquidation would produce the same proceeds as a foreclosure, and they note that the Supreme Court's federalism concerns with respect to state property laws apply equally to § 547.

Before proceeding with this analysis, the Court must address whether it is bound by *stare decisis* to follow the decision in *In re FIBSA Forwarding, Inc.,* 230 B.R. 334, 337 (Bankr. S.D. Tex.), *aff'd*, 244 B.R. 94 (S.D. Tex. 1999). *FIBSA* is a decision reached by United States Bankruptcy Judge Steen and affirmed by United States District Judge Ellison of this District. This Court concludes that—although such an opinion deserves great deference—it is not binding on this Court. Consequently, the Court—which gives great deference to the *FIBSA* opinions—is nevertheless mandated to undertake its own analysis of the application of *BFP* to § 547.

Showalter contends that the "decisions from a United States District Court in the same District on appeal are binding precedent on bankruptcy courts in the same district." Creditor's Response Brief on the Application of 11 U.S.C. § 547 at 3; *see* 28 U.S.C. § 151. Although there is support for that position, this court finds that it is not so bound.

There are two significant opinions by bankruptcy courts in this Circuit that have reached opposite conclusions on this question. *In re Romano*, 350 B.R. 276, 281 (Bankr. E.D. La. 2005) holds that *stare decisis* does not apply; *In re Rand Energy Co.*, 259 B.R. 274, 276 (Bankr. N.D. Tex. 2001) holds that *stare decisis* does apply. Showalter contends that the Fifth Circuit opinion in *In re Jobs.com, Inc.*, 393 F.3d 508 (5th Cir. 2004) impliedly affirmed the Northern District position. The Court's review of *In re Jobs* lends no credence to Showalter's position; he is simply incorrect.

This Court does not understand how *stare decisis* could apply to decisions made by the District Court. Here is the rub—it is unambiguous that one district judge is not bound by the decisions of the other district judges of the district court. As the Third Circuit noted:

> [I]t is clear that there is no such thing as "the law of the district." Even where the facts of a prior district court case are, for all practical purposes, the same as those presented to a different district court in the same district, the prior "resolution of those claims does not bar reconsideration by this Court of similar contentions. The doctrine of stare decisis does not compel one district court judge to follow the decision of another." *State Farm Mutual Automobile Insurance Co. v. Bates,* 542 F. Supp. 807, 816 (N.D.Ga.1982).FN7 Where a second judge believes that a different result may obtain, independent analysis is appropriate. *Id.*

*Threadgill v. Armstrong World Indus., Inc.,* 928 F.2d 1366, 1371 (3d Cir. 1991).

Accordingly, two district judges from the same district court could reach opposite conclusions on the same difficult question of law. Pending resolution by the Circuit Court, what should the bankruptcy judge do? Should the rule be that the first opinion be followed or the second opinion? There is no answer to that question.

In *Romano,* Judge Brown was concerned that "[s]uch a rule effectively makes the random assignment of appeals determinative for *stare decisis* purposes, and leaves no room for differing opinions of other judges in the district." *In re Romano*, 350 B.R. 276, 281 (Bankr. E.D. La. 2005).

The decisions of one district judge do not bind another judge of the same court. *Threadgill,* 928 F.2d at 1371. This Court operates as a unit of the District Court. 28 U.S.C. § 151. The majority of courts that have considered the issue have concluded that *stare decisis* does not apply to the decisions of the district court. *In re Romano at* 279. This Court will follow the majority rule.

Nevertheless, *FIBSA* (and its appeal) are carefully considered opinions by highly qualified jurists. Although neither the bankruptcy nor district court opinions are binding on this Court, this Court will nevertheless give the opinions great deference.

The opinions that apply *BFP* in § 547 cases assume that a chapter 7 liquidation would realize no greater value than a forced foreclosure. In those cases, there may have been merit to that assumption. But, the Court cannot make such an assumption in this case.

As discussed above, a chapter 7 trustee has the time and incentive to promote a competitive auction or to find a buyer willing to pay a fair market value. As the court in *In re Rambo* stated, "clearly there are circumstances where the value a Chapter 7 trustee could secure is greater [than] the aggregate of all liens, costs of sale and the debtor's exemption, and the trustee would seek to sell the asset to provide a dividend to unsecured creditors. In such instances, the price the trustee could secure could not be the equivalent of the amount bid-in at a foreclosure sale." *In re Rambo*, 297 B.R. 418, 432 (Bankr. E.D. Penn. 2003).

The Court acknowledges that the policy concerns expressed in *BFP* would have equal applicability to § 547—if the law allowed this Court to ignore the statute and impose its own policy. In *BFP,* the Supreme Court was required to consider policy issues because it needed to resolve how to interpret the "reasonably equivalent value" standard in the statute. It applied its policy concerns in determining that "reasonably equivalent value" must be determined at the time of and in the context of a state law foreclosure sale.

This Court does not have that luxury. Section 547 does not lend itself to such an interpretation and the Court may not ignore Congressional language in favor of judicial policy.

The rules of statutory construction require courts to end their judicial inquiry when a statute is found to be plain and unambiguous on its face. *Robinson v. Shell Oil Co.*, 519 U.S.

14

337, 340, 117 S. Ct. 843, 136 L. Ed. 2d 808 (1997). "When we find the terms of the statute unambiguous, judicial inquiry is complete except in rare and exceptional cases." *Demarest v. Manspeaker*, 498 U.S. 184, 190, 111 S. Ct. 599, 112 L. Ed. 2d 608 (1991). As the Fifth Circuit recently reaffirmed:

> When interpreting the [Bankruptcy] Code, courts should begin where they would when interpreting any statute: its plain language. *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S. Ct. 1026, 103 L. Ed. 2d 290 (1989). If the statute is clear, the inquiry is at its end, and we enforce the statute on its terms. *See id.* That rule should inform the reading of Code provisions…

*In re Miller,* 570 F.3d 633 (5th Cir. 2009).

Section 547, in straightforward language, requires the avoidance of transfers that allowed the creditor to receive more than the creditor would have received in a hypothetical chapter 7 liquidation. There is nothing in § 547 equivalent to § 548's ambiguous use of "value." *BFP* noted that the bankruptcy courts should not interpret a Code provision in a manner that interferes with state real property concerns absent unambiguous statutory language. *BFP*, 511 U.S. at 544 ("To displace traditional state regulation in such a manner, the federal statutory purpose must be 'clear and manifest'"). There is no ambiguity about the meaning of "more" or "chapter 7 liquidation" or the clear purpose of § 547.

Determining the value of a foreclosed property may prove to be a fact intensive inquiry in some future case. In this case, there is no factual ambiguity. Even if there were factual ambiguity, that is not the equivalent of a statutory ambiguity. Showalter asks this Court to apply a policy analysis (which would be appropriate only when there is a statutory ambiguity), when the only ambiguity that could exist would relate to the underlying facts. "The plain meaning of legislation should be conclusive, except in rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *U.S. v. Ron Pair*

*Enters., Inc.*, 489 U.S. 235, 242, 109 S. Ct. 1031, 103 L. Ed. 2d 290 (1989). This Court has been unable to locate any authority (and Showalter supplies none) that allows the Court to vary the terms of a statute merely because a Court might have to resolve a contested factual matter over which there was ambiguity.

### Conclusion

In this case, the transfer of Greg's Ballroom at the November 6, 2007 foreclosure sale satisfies each of the requirements of § 547(b) of the Bankruptcy Code. Section 522(h) of the Bankruptcy Code requires the Court to avoid certain transfers of exempt property if the transfer meets the requirements of § 547. Accordingly, the Court will issue a judgment that avoids the transfer.

SIGNED **August 5, 2009.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE